Stuart R. Day #5-2244
Ryan Schwartz #6-3611
Williams, Porter, Day & Neville, P.C.
159 North Wolcott, Suite 400 (82601)
P.O. Box 10700
Casper, Wyoming 82602-3902
Telephone: (307) 265-0700
Facsimile:  (307) 266-2306
Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| BLACK DIAMOND ENERGY PARTNERS 2001-A LTD., et al., <br><br> Plaintiffs, <br><br> vs. <br><br> S&T BANK, <br><br> Defendant. | ) ) ) ) ) ) Civil Action No.: 10-CV-192-F ) ) ) ) ) |

**RESPONSE AND BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

Defendant, S&T Bank, files the following Response and Brief in Opposition to Plaintiffs' Motion to Remand, and in support thereof states as follows:

**I. SUBJECT MATTER JURISDICTION FACTS AND BACKGROUND**

On August 12, 2010, Defendant received a copy of Plaintiffs' Complaint in the instant matter which has been filed in the District Court of Johnson County, Wyoming, Fourth Judicial District. The Complaint was filed by seventeen Nevada limited partnerships and raises several state law-based causes of action, including among others, negligence, breach of contract and breach of fiduciary duty. The heart of Plaintiffs' allegations are that Defendant lent money to Plaintiffs' general partners, and when the limited partnerships experienced serious financial trouble, Defendant took control of and

become the alter ego of the Plaintiffs' general partners. *Complaint ¶¶ 31-95*. The alleged harm are monetary damages that, while acting as the alter ego of the general partners of Plaintiffs, Defendant caused when it allegedly violated alleged duties owed to Plaintiffs by refusing to advance federal Troubled Assets Relief Program ("TARP") monies in its possession allegedly intended by the federal government to be used to benefit Plaintiffs. *Complaint ¶¶ 110-115*. TARP was created by Public Law 110-343, which was enacted on October 3, 2008 and is part of the Emergency Economic Stabilization Act of 2008, 12 U.S.C. §5201 *et seq.*, which was signed into law by President George W. Bush.

Among the allegations that Plaintiffs have incorporated into each of their causes of action is the allegation that Defendant received $108,676,000 in TARP "bail out" funds from the federal government, which funds were specifically intended by the federal government to aid struggling businesses like Plaintiffs, and that Defendant has "repaid nothing" to the federal government. *Complaint ¶¶ 42, 96, 109, 117, 125, 132, 137, 143*.

Clearly intending to prove that Defendant was in a special fiduciary relationship with the limited partnership Plaintiffs, there is no doubt that the resolution of ultimate issue of whether Defendant breached certain duties to Plaintiffs will hinge on whether Defendant had a duty to utilize federal TARP monies for the benefit of Plaintiffs. The foundation of Plaintiffs' Complaint rests on the notion that Defendant had an obligation to lend to Plaintiffs and specifically had federal resources intended for that purpose. **For instance, Paragraph 90 of the Complaint illustrates that Plaintiffs' alleged harm flows from the allegation that Defendant, in its alleged CRO capacity, failed to lend monies that would have helped Plaintiffs avert financial alleged harm.** Paragraph 90 reads in relevant part as follows:

> Defendant and Shaffer had failed to timely pay numerous vendors, that numerous checks written on DBE's accounts were not going to be honored by Defendant, that during the time that Shaffer served as CRO DBE's day to

> day accounting necessary for preservation and maintenance of the Plaintiffs' assets was ignored and/or impaired, that Defendant and Shaffer had failed to return electricity to the Wells…that due to nonpayment of vendors numerous liens had been filed against Plaintiffs' property and in certain cases reduced to judgment…and that numerous leases and surface use agreements were subject to loss and/or in fact lost.

Contrary to Plaintiffs' assertion, Defendant denies that federal TARP monies were intended by the federal government to benefit companies in situations similar to Plaintiffs. This TARP lending issue goes directly to the heart of whether or not Defendant violated alleged duties to Plaintiffs.

There is no denying that, on its face, Defendant's Complaint raises the significant federal question of whether Defendant's denying TARP monies to Plaintiffs constituted a breach of its alleged duties to Plaintiffs, including the fiduciary duty to act in Plaintiffs' interest as the alleged *de facto* managing partner of Plaintiffs' limited partnerships. Indeed, because the core of the entire Complaint rests ultimately upon the allegation that Defendant did not lend TARP money to aid the limited partnerships, it is undeniable that a key, primary issue for trial in this case is whether Defendant had a special obligation to lend TARP money for the benefit if Plaintiffs.

Viewing the alleged facts, claims and damages in the Complaint for what they are, it would be naïve to buy into the notion that Plaintiffs' factual introduction of TARP to the Complaint was merely an inconsequential and trivial averment that will not play a key, prominent role in Plaintiffs' attempt prove that it was wronged by Defendant in its alleged fiduciary role. Indeed, the use of TARP monies will be a primary issue on trial in determining the propriety of Defendant's actions with respect to Plaintiffs.

28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. As explained herein below, Defendant believes that the current state of federal law dictates that removal of the instant

action to federal court was justified and proper. 28 U.S.C. § 1441(b) concerning removal of actions from state court provides in relevant part, "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable…"

## II.   LEGAL STANDARD FOR REMOVAL PURSUANT TO 28 U.S.C. § 1331

Over the years, there has been substantial disagreement among both courts and scholars concerning the scope and meaning of the general federal question jurisdiction statute. That debate has largely been focused on the meaning of the phrase "arising under". *15-103 Moore's Federal Practice – Civil § 103.31*.

The question whether a claim "arises under" federal law must be determined by reference to the "well-pleaded complaint." Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983). While the vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action, a case may arise under federal law **"where the vindication of a right under state law necessarily turned on some construction of federal law."** Id. at 9; *See also* Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 808. "There is no single, precise definition of the concept; rather, "the phrase 'arising under' masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system." Franchise Tax Board, at 8; Merrell Dow Pharmaceuticals Inc., at 808; *see also* Drake v. Cheyenne Newspapers, Inc., 842 F. Supp. 1403, 1409 (D. Wy. 1994).

"28 U.S.C.S. § 1331's provision for federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law (e.g., claims under 42 U.S.C.S. § 1983). There is, however, another long-standing, if less frequently encountered, variety of federal "arising under" jurisdiction, judicial precedent has recognized for nearly 100 years that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues.

**The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."** Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308, 312 (2005).

A private cause of action under the federal law at issue is <u>not</u> necessary to invoke federal court jurisdiction under 28 U.S.C. § 1331.  <u>Id</u>. at 317-18.  **Rather, the question is "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."** <u>Id</u>. at 314.

### III.  ARGUMENT

**A.    PLAINTIFFS' CHARACTERIZATION OF THE RELEVENCE OF FEDERAL TARP FUNDING TO ITS COMPLAINT AS "INNOCUOUS" IS PREPOSTEROUS**

For as much as legal minds have differed on what exactly the words "arising under" mean for purposes of 28 U.S.C. § 1331, this much is certain - if success or failure on a claim of the Plaintiffs will turn on the resolution of a disputed issue of federal law, federal court has jurisdiction over the claim as long as it "does not disturb a congressionally approved balance of judicial responsibilities." Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. at 314 (2005). An examination of Plaintiffs' Complaint leaves no doubt of the importance of the interpretation of Congress' federal TARP law to the ultimate resolution of certain of Plaintiffs' claims.  Therefore, this court has a duty to deny Plaintiffs' Motion and allow Defendants to fight the instant law suit in this federal forum.

1. ***Plaintiffs' Motion for Remand and Brief in Support Misconstrues and Misapplies the Law on Removal***

Plaintiffs' Motion is primarily founded upon the false legal conclusion that in order to remove a state law-based cause of action, the federal law at issue must also provide for a private right cause of action. *See Motion pgs. 2-3, 10-14*. Plaintiffs spend several pages of their Motion and Brief string citing cases for the proposition that federal TARP law does not provide a private cause of action, and how Plaintiffs have not alleged a cause of action under the federal law and that this is fatal to Defendant's removal. *Motion p. 14*. Based on their (incorrect) understanding and analysis of the law, Plaintiffs insist that this Court should sanction Defendant with attorneys' fees for removing the case.

Plaintiffs obviously overlooked the United States Supreme Court case <u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing</u>, 545 U.S. 308, 312 (2005), which expressly rejected Plaintiff's assertion of what the law is. The Supreme Court ruling in <u>Grable</u> came a few years after the Tenth Circuit opinion in <u>Nicodemus v. Union Pacific Corp.</u>, 318 F.3d 1231 (10th Cir. 2003) and <u>Rice v. Office of Servicemembers' Group Life Ins.</u>, 260 F.3d 1240 (10th Cir. 2001) also cited by Plaintiffs, which opinions also misconstrued that particular aspect of the law on removal.

2. ***Plaintiffs' Complaint Sets the Stage with the "2008 Financial Crisis" and the Financial Decline of BDE and BDED.***

At Paragraph 26, Plaintiffs set the stage for their Complaint by explaining that the spring of 2008 saw a nationwide financial crisis and that resulted in banks and other lending institutions "tightening their lending requirements" and "ceasing to advance credit". At Paragraph 29, Plaintiffs explain that they sought meetings with Defendant to express their financial concerns "about not being able to sell assets to improve cash flow as the price of natural gas declined" and how certain events has "severely and negatively impacted cash flow". Plaintiffs go on to explain that various

options were presented to Defendant to get Plaintiffs out of the "financial pinch", which involved the necessity for a bridge loan because BDE would have the "inability to pay vendors, resulting in vendor liens" and BDE potentially being "removed" as operator of the Wells. *Complaint ¶ 32*. Plaintiffs explain that throughout 2008, BDE's financial condition continued to "deteriorate" and BDE could not find any other lender to provide financing to it. *Complaint ¶¶ 35-41*.

    3.    ***Interplay Between the 2008 Financial Crisis, Defendant's Alleged Duty to Plaintiffs, and the Federal TARP Program***

Immediately after introducing a plethora of alleged facts about the 2008 national financial crisis and how the limited partnerships' business was in financial strife, Plaintiffs proceed to introduce the section of their Complaint which they title **"Beginning of Defendant's Dominion Over BDE and Plaintiffs' Assets"**. *See p. 9, Section "E"*. In this section, Plaintiffs explain that as their business was suffering financially, Defendant received federal TARP funds which the government had allegedly specifically intended for use to help trouble business like theirs. *Complaint ¶ 42*. It is also the section where Plaintiffs seek to establish special duties owed to them by virtue of Defendant having allegedly begun to exercise control over BDE. *Complaint ¶ 54*.

**Not only do Plaintiffs allege everything they could learn about Defendant's participation in the TARP program, but Plaintiffs have utilized that section of the Complaint to set forth their alleged *alter ego* theory and <u>create a key factual nexus</u> between that theory and Defendant's possession of federal TARP funds. By creating this factual connection, the alleged assumption of special fiduciary duties by Defendant necessarily becomes a major and key factor in determining whether Defendant violated a duty to Plaintiffs when it refused to advance additional funds for Plaintiffs' benefit.** *See p. 9, Section "E"*. At Paragraph 42 of the

Complaint section titled "Beginning of Defendant's Dominion Over BDE and Plaintiffs' Assets", Plaintiffs aver the following:

> **Prior to this time**, on or about January 15, 2009, Defendant's holding company, S&T Bancorp, received $108,676,000 in TARP (Troubled Assets Relief Program) bailout funds from the United States Treasury Department. **One of the main purposes** of the Treasury Department's payout of TARP funds to financial institutions such as Defendant was to encourage these banks to resume lending again at levels seen before the financial crisis had begun, not only to consumers but also to businesses. Upon information and belief, **Defendant had and continues to have full access to S&T Bancorp's TARP bailout funds and has repaid nothing** to the Treasury Department in connection with its bailout. (emphasis added)

There is an extremely important connection between Plaintiffs' allegation that Defendant became the alter ego of BDE and a fiduciary to Plaintiffs, and the allegations that Defendant took possession of federal TARP monies but did not make those funds available for the benefit of Plaintiffs. TARP funds will not only be important to this case, they will be a focus of discovery in this case and will be a focus of Plaintiffs' case in chief. Whether Defendant breached the duties to Plaintiffs alleged in Counts 1, 2, 3 and 6 will turn on the issue whether, under the facts of this case and pursuant to TARP law, a lender in possession of TARP funds acting in a fiduciary capacity toward Plaintiffs neglected its duty to lend those federal monies and provide financial aid to Plaintiffs.

Plaintiffs assert in their Motion for Remand and Brief in Support Thereof ("Motion") that their reference to TARP was completely "innocuous" and is merely "ancillary" to the real gist of their claims. *Motion, p. 2*. The Merriam-Webster dictionary defines "innocuous" as follows: "(1) producing no injury: harmless, (2) not likely to give offense or hostility: inoffensive, insipid." *See* www.merriam-webster.com. With all due respect to Plaintiffs, the TARP allegations are *clearly intended* to cause offense and hostility towards Defendant. Plaintiffs investigated exactly how much TARP money S&T Bancorp received and precisely when it was received. Plaintiffs researched the

purpose of the TARP law and to whom the money was allegedly intended to be lent. Plaintiffs aver that Defendant had possession of the federal TARP funds specifically at the time that Plaintiffs needed them and have alleged that S&T Bancorp has not paid any of the TARP funds back to the federal government.

4. *Several Claims Will Necessarily Turn On Whether Defendant Had a Special Duty to Lend Funds for Plaintiffs' Benefit*

Plaintiffs have incorporated their factual allegations, including the TARP and alter ego allegations, into all of their causes of action. However, the TARP and alter ego allegations will necessarily be key factors in the resolution of Count Nos. 1 through 3 and 6, alleging negligence, breach of fiduciary duty, breach of good faith and fair dealing, and breach of contract. These causes of action all center around the notion that Defendant did not fulfill duties to Plaintiffs and the harm alleged all stems from the fact the Plaintiffs' business were completely broke and that Defendant did not lend money to preserve Plaintiffs' business assets. *Complaint ¶¶ 43, 45, 48-49, 52, 73, 78, 89-90*. According to the Complaint, when Defendant's refusal to lend further monies caused the limited partnerships to experience no electricity, returned checks, loss of revenues, and loss of leases and agreements. *Complaint ¶¶ 90*.

## CONCLUSION

The United States Supreme Court has stated that for purposes of 28 U.S.C. § 1331, the question to be asked is **"does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."** Grable & Sons Metal Products, Inc., 545 U.S. at 314. Defendant respectfully submits that under the facts of this case, the answer is most definitely yes. These state claims necessarily raise a substantial and disputed federal issue which this court may entertain within disturbing any congressionally approved

balance of judicial responsibilities.  For the foregoing reasons, Plaintiffs' Motion for Remand should be denied.

**Defendant S&T Bank**

By: /s Ryan Schwartz
Stuart R. Day, WSB #5-2244
Ryan Schwartz, WSB# 6-3611
Williams, Porter, Day & Neville, P.C.
P.O. Box 10700
Casper, Wyoming 82602-3902
(307) 265-0700
sday@wpdn.net

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that a true and correct copy of the following *Response and Opposition to Plaintiffs' Motion for Remand,* was delivered to the Court via the CM/ECF System and thereby served upon counsel via electronic transmission this 11th day of October, 2010 to:

Greg L. Goddard, WSB #5-1252
Goddard, Wages & Vogel
412 North Main Street
Buffalo, Wyoming 82834

David H. Herrold
Mark A. Waller
Sneed, Lang, Herrold
One West 3rd Street, Suite 1700
Tulsa, OK 74103

BY: /s Ryan Schwartz
Ryan Schwartz, WSB #6-3611