Greg L. Goddard, Wyo. Bar # 5–1252
GODDARD, WAGES & VOGEL, P.C.
412 North Main Street
Buffalo, Wyoming 82834
Telephone: (307) 684-9595
Facsimile:  (307) 684-9285
E-mail: gwv@wyoming.com
COUNSEL FOR THE PLAINTIFFS

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| BLACK DIAMOND ENERGY PARTNERS 2001-A LTD., *et al.*, <br><br>                              Plaintiffs, <br><br>     vs. <br><br> S&T BANK, <br><br>                              Defendant. | **Case No: 10–CV-00192-NDF** <br><br> (*Removed from Johnson County, WY Civil Action No. CV–2010-0114*) |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND**

Plaintiffs hereby reply in support of their *Motion to Remand and Brief in Support* **[Dkt #28]** (the "Motion") and in light of Defendant's Response filed October 11, 2010 **[Dkt #34]**.[1] The allegation of fact at issue—that Defendant received T.A.R.P. funds—provides nothing more than that– **a** *fact* that for some reason Defendant finds difficult to deny, perhaps because it emasculates any defense that the bank was short of funds during the relevant timeframe. Nonetheless, that fact provides no necessary federal element that establishes jurisdiction in this Court under 28 U.S.C. § 1331.  As shown below, and despite Defendant's transparent attempts to insert a federal question into Plaintiffs' state-law *Complaint*, nothing in the analysis for this Court under existing precedent has changed, and remand of the case is required.

---

[1]   The definitional terms used in the Motion are also employed in this reply.

## SUMMARY OF DEFENDANT'S RESPONSE

In its Response, Defendant is almost entirely devoted to the task of interjecting a non-existent T.A.R.P. cause of action[2] into Plaintiffs' state court *Complaint* in order to shore-up its removal efforts. Misreading the otherwise clear allegations of that pleading, Defendants paint a misleading picture throughout their filing that Plaintiffs' claims (for breach of contract, negligence, breach of fiduciary duty, breach of duty of good faith and fair dealing, interference with contract and business expectancy, slander of title and indemnification/contribution) are somehow premised upon the failure of the bank to loan T.A.R.P. monies to Plaintiffs' managing general partners (BDE and BDED). Defendants' position in opposition to the Motion can easily be summed up in its very own words:

> The alleged harm are money damages that, while acting as the alter ego of the general partners of Plaintiffs, Defendant caused when it allegedly violated duties owed to Plaintiffs by refusing the advance federal [T.A.R.P.] monies in its possession allegedly intended by the federal government to be used to benefit Plaintiffs."

Response at 2 (citing *Complaint* ¶¶ 110-15).[3] Defendant's efforts to distort a picture that was

---

[2] As shown in the Motion, T.A.R.P. provides no private right of action to borrowers (such as BDE or BDED) of lenders (such as Defendant) who received funding from the Treasury Department. Motion at 11-13.

[3] A cursory review of the basis for Defendant's statement here (*i.e.*, Complaint ¶¶ 110-15) reveals the inaccuracy in Defendant's analysis and that there was no objectively reasonable basis for removal.

At ¶ 110, Plaintiffs alleged that Defendant and the Chief Restructuring Officer (CRO) it required BDE and BDED to accept, later displacing their long-time president and chief executive, so dominated and controlled those entities that they became the mere instrumentalities and *alter egos* of the bank. Complaint at 26. This allegation does not in any way implicate T.A.R.P. or depend on any interpretation of T.A.R.P., nor does it state that Defendant failed to loan T.A.R.P. monies to BDE or BDED.

At ¶ 111, Plaintiffs alleged that while Defendant and its CRO so dominated and controlled BDE and BDED [*i.e.*, when Defendant and CRO had effectively assumed the position of Plaintiffs' general managing partners], the bank's interests were directly adverse to those of the limited partnerships and it

otherwise completely drawn as a state-court lawsuit are particularly transparent and must fail.[4]

This action must be remanded to the state court where it was originally brought.

---

held interests that were detrimental to and in competition with Plaintiffs' interests. Complaint at 26. This allegation does not require any analysis or interpretation of T.A.R.P. in any way, nor does it depend upon any interpretation of T.A.R.P., nor does it allege or intimate that Defendant failed to loan T.A.R.P. monies to BDE or BDED.

At ¶ 112, Plaintiffs alleged the domination and control of BDE and BDED by Defendant and through the CRO rendered the bank as the *de facto* and actual operator of the coalbed methane gas wells and general managing partners of Plaintiffs, thereby establishing a fiduciary duty owed by Defendant to the Plaintiffs including the duties of loyalty and due care. Complaint at 26. Again, this allegation requires no analysis of T.A.R.P., nor does it allege or intimate that a fiduciary relationship existed between Defendant and Plaintiffs because of T.A.R.P. or any requirement that Defendant loan T.A.R.P. funds to BDE or BDED.

At ¶ 113, Plaintiffs alleged that Defendant, itself and through the CRO, took over the businesses and operations of BDE and BDED for its own selfish purposes and in competition for Plaintiffs' gas wells and other assets, and appropriated or attempted to appropriate for its own benefit limited partnership opportunities in which Plaintiffs held or would have held valuable interests and further conducted the business and operations of the Plaintiffs, and safeguarded their assets, in a grossly negligent and reckless manner, all in breach of its fiduciary duties owed to the Plaintiffs. Complaint at 26-27. Like the preceding allegations, this allegation in no way implicates T.A.R.P., depends upon an interpretation of T.A.R.P. or alleges breach of fiduciary duty by failing to loan T.A.R.P. funds to BDE or BDED.

Finally, ¶¶ 114-15 of the Complaint are conclusory paragraphs that allege Plaintiffs suffered and are entitled to recover damages from Defendant. Complaint at 27. These allegations, like the others, in no way allege or intimate that Plaintiffs suffered damages by virtue of Defendant's failure to loan their Managing General Partners (BDE/BDED) T.A.R.P. funds.

These referenced allegations, the factual allegations that directly support them and the other allegations that follow at ¶¶ 116-146 of the *Complaint*, are the relevant parts of the pleading that directly and necessarily relate to the plaintiff's cause of action that should be considered in respect to the Motion. *Mescalero Apache Tribe v. Martinez*, 519 F.2d 479, 481 (10th Cir.1975). Statements in the *Complaint* that are ancillary to the cause of action, including Paragraph 42, are to be disregarded in the Court's analysis of removal and federal question jurisdiction. *Id.*

[4] "A defendant 'cannot change the character of a plaintiff's case' by inserting allegations of a federal nature in the petition for removal." *Shockley v. City of Waurika*, 2010 WL 3081528 at *2 (W.D.Okla.) (citing *Warner Bros' Records, Inc. v. R.A. Ridge Distrib. Co.*, 475 F.2d 262, 264 (10th Cir.1973)). "'[I]f the plaintiff chooses to bring a state law claim, that claim cannot generally be 'recharacterized' as a federal claim for the purpose of removal." *Commonwealth of Kentucky v. Cibahia Tabacos Especiais Limitada*, 2005 WL 1868808 at *2 (E.D.Ky.) (quoting *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 322 (6th Cir.2005)).

3

**ARGUMENTS AND AUTHORITIES**

I.   **Subject Matter Jurisdiction Is Still Non-Existent, Even Under *Grable*.**

In its Response, Defendant seems to urge the proposition that the Supreme Court's post-*Merrell Dow*[5] decision in *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005), radically alters the analysis of whether a federal claim arises within the context of this removed state-law cause of action. It only briefly focuses on *Grable*'s discussion of *Merrell Dow*'s holding, cited by the Tenth Circuit as requiring subject matter jurisdiction in a state-law cause of action to be dependent upon a finding that "resolution of that action must necessarily turn on a substantial question of federal law, and that federal law in turn must create a private cause of action." *Rice v. Office of Servicemembers' Group Life Ins.*, 260 F.3d 1240, 1245 (10th Cir.2001) (citing *Merrell Dow*, 478 U.S. at 808). Defendant seems to argue that *Grable* somehow "undid" the holding in *Merrell Dow* and that, because *Merrell Dow* is no longer the standard, their removal efforts were appropriate.

In 2005, the *Grable* Court did address the *Merrell Dow* analysis at length and within the context of very specific circumstances before that Court. The dispute that had come before the Court was a claim by the owner of real property, seized and sold by the IRS on account of a federal tax delinquency, that the sale of the land was improper because of the failure of notice under applicable *federal* law. *Id.* at 311. The action was brought in state court as a quiet title cause of action, and it was subsequently removed to the federal district court under § 1331. *Id.*

---

[5]   *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 810 (1986).

4

The issue of federal question-based removal was raised in the Sixth Circuit and affirmed, and ultimately came before the Court on *certiorari*.

In addressing subject matter jurisdiction, the Court first noted that it has not "treated 'federal issue' as a password opening federal courts to any state action embracing a point of federal law. Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. The Court later passed upon its earlier decision in *Merrell Dow*, noting that it "is not to the contrary," *id.* at 316, further noting:

> The [*Merrell Dow*] Court assumed that federal law would have to be applied to resolve the claim, but after carefully examining the strength of the federal interest at stake and the implications of opening the federal forum, held federal jurisdiction unavailable. Congress had not provided a private federal cause of action for violation of the federal branding requirement, and the Court found "it would…flout, or at least undermine, congressional intent to conclude that federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violation of that federal statute solely because the violation…is said to be a…"proximate cause" under state law." *Id.*, at 812, 106 S.Ct. 3229.

*Id.* It then held:

> **Accordingly, <u>Merrell Dow</u> should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the "sensitive judgments about congressional intent" that § 1331 requires.** The absence of any federal cause of action affected *Merrell Dow*'s result two ways. **The Court saw the fact as worth some consideration in the assessment of substantiality. But its primary importance emerged when the Court treated the combination of no federal cause of action and no preemption of state remedies for misbranding as an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331**. The Court saw the missing cause of action not as missing a federal door key, always required, but as a

missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. **For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a cause of action.  And that would have meant a tremendous number of cases.**

\* \* \* \*

A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts. **Expressing concern over the "increased volume of federal litigation," and noting the importance of adhering to "legislative intent,"** *Merrell Dow* **thought it improbable that Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating federal law "solely because the violation of the federal statute is said to [create] a rebuttable presumption [of negligence]…under state law." 478 U.S., at 811-812, 106 S.Ct. 3229…. <u>In this situation, no welcome mat meant keep out.  *Merrell Dow*'s analysis thus fits within the framework of examining the importance of having a federal forum for the issue, and the consistency of such a forum with Congress's intended division of labor between state and federal courts</u>**.

*Id.* at 318-19 (emphases added).  *Grable* in no way overturned *Merrell Dow*. Rather, it reaffirmed the Court's analysis of congressional intent as a factor in the process of determining whether a § 1331 threshold is met.  As one district court subsequently held:

*Grable*…**makes clear that** *Merrell Dow*…**remains good law and stands for the proposition that Congress's failure to provide a federal cause of action…may be indicative of its intent not to provide a federal forum for state law actions alleging violations of the statute**.

\* \* \* \*

I conclude that Congress did not intend to provide a federal forum for state law tort actions raising the issue.  The cases before me are closer to *Merrell Dow* than *Grable*.  The FMAI does not include a federal cause of action, and although plaintiffs' state law claims involve an alleged violation of a federal standard, they do not implicate an overriding federal interest.  In this respect, they differ from *Grable* where the federal question raised was critical to the IRS's efforts to satisfy tax liabilities from the property of delinquent taxpayers.  And, reflecting its concern about the proper balance of

6

> responsibilities between state and federal courts…*Grable* cautioned lower federal courts against exercising jurisdiction over state law tort claims merely because such claims allege a violation of a standard provided by a federal statute or regulation.

*McCormick v. Excel Corp.*, 413 F.Supp.2d 967, 970 (E.D.Wis.2006) (emphasis added).[6] Therefore, the absence of a private right of action provided by Congress still remains the most reliable indicator of Congress' intended division of labor between state and federal courts.

A year after its decision in *Grable*, the Supreme Court qualified that decision in *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677 (2006). There, the Court pointed out that "Federal courts should await a clear signal from Congress before treating…auxiliary claims as 'arising under' the laws of the United States." *Id.* at 682. The Court noted that *Grable* had "presented a nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter would govern numerous tax sale cases.'" *Id.* at 701. That was because "'The meaning of the federal tax provision…is an important issue of federal law that sensibly belongs in a federal court.'… Whether Grable received noticed adequate under [26 U.S.C.] § 6335(a)…was 'an essential element of [Grable's] quiet title claim'; indeed, 'it appear[ed] to be the only…issue contested in the case.'" *Id.* at 700 (quoting *Grable*, 545 U.S. at 315). The *Empire* Court then concluded its analysis of *Grable*: "In sum, **Grable emphasized that it takes more than a**

---

[6] *See also*, *e.g.*, *Bolden v. KB Home*, 618 F.Supp.2d 1196, 1206 (C.D.Cal.2008) (noting *Grable* "still affirmed the analysis of the federal labeling standard at issue in *Merrell Dow*…;" finding in the case before it no private right of action and that fact, although not dispositive, "suggests that Congress did not intend for private litigants to enforce the [Act at issue] in the federal forum"); *Cal. Healthcare Ass'n v. Shewry*, 2006 WL 2587123 at *5 (N.D.Cal.) (finding that *Grable* had not overturned *Merrell Dow* but specifically held that "the absence of a federal private right of action…is still 'evidence relevant to' whether federal question jurisdiction should extend to particular cases").

7

**federal element "to open the 'arising under' door."** 545 U.S., at 313, 125 S.Ct. 2363.  This case cannot be squeezed into the slim category *Grable* exemplifies." *Id.* at 701 (emphasis added).

Federal courts across the country recognize that *Empire* limited the holding in *Grable*. For example, in *Varco v. Tyco Electronics Corp.*, 2009 WL 728571 (D.Md.), the district court recognized that the "second pathway" to § 1331 jurisdiction (*i.e.*, permitting a federal court to exercise jurisdiction over a plaintiff's state law action when it "necessarily depends on resolution of a substantial question of federal law") was extremely narrow.  *Id.* at *3 (citing *Grable*). Relying on *Empire*, that court noted "the Supreme Court has emphasized that this second pathway into federal court **is to be reserved for the rarest of cases, and should not be permitted as a matter of course**." *Id.* (emphasis added).  In *Gonzales v. Ever-Ready Oil, Inc.*, 636 F.Supp.2d 1187 (D.N.M.2008), the district court noted that *Empire* had "emphasized that *Grable* exemplifies a slim category of cases." *Id.* at 1190-91.  In *Gillenwater v. Burlington Northern and Santa Fe Rwy. Co.*, 481 F.Supp.2d 998 (E.D.Mo.2007), the district court noted that "matters that will properly merit federal jurisdiction under *Grable* will be rare." *Id.* at 1004 (citing *Empire*).  In *Certified Enterprises, LLC v. Dauphin Creek Apts., LLC*, 2009 WL 2870506 (S.D.Ala.), the district court there recognized about *Empire* that "In 2006, the Supreme Court elaborated upon its decision in *Grable*, explaining that **the *Grable* test carves out only a 'special and small category' of cases** out of state court jurisdiction over state-law claims." *Id.* at *7 (emphasis added).  And in *Stern v. Baldwin*, 2010 WL 125843 (D.N.J.), the district court also recognized that through *Empire*, "the Supreme Court further limited *Grable* and made it far more difficult to establish federal jurisdiction based on the *Grable* theory." *Id.* at *4.  As that decision

makes clear, "In *Empire*…the Supreme Court confirmed that *Grable* only applies when there is a 'pure issue of law…that could be settled once and for all and thereafter….'." *Id.*[7] Thus, to the extent Defendant is urging the position that *Grable* somehow 'opens the floodgates' to federal courts in cases such as this (where, in a state-law *Complaint* containing 146 paragraphs of allegations, the term "TARP" can be found three times in a singular, ancillary paragraph that merely provides part of the factual backdrop of a case that involves no 'pure issue of federal law'), it has egregiously misconstrued the law.

*Grable* does not change this Court's analysis on the issue of federal question jurisdiction or whether, in Plaintiffs' state-law cause of action, "resolution [of that action] necessarily turn[s] on a substantial question of federal law…." *Rice*, 260 F.3d at 1245 (citing *Merrell Dow*). An analysis of that issue still relies to a large degree upon whether Congress ever intended to provide a private right of action on the claimed federal question– which, in this case, under the EESA or T.A.R.P., it did not. Under the analysis provided by *Merrell Dow*, *Grable*, *Empire* and other Tenth Circuit precedent, Defendant's removal attempt fails because removal and subject matter jurisdiction neither exist nor can be fabricated by Defendant's distortion of the Complaint.

---

[7] *See also*, *e.g.*, *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1296 (11th Cir.2008) (*Empire* "explained that the *Grable* test carves a 'special and small category' of cases out of state court jurisdiction over state-law claims"); *Kalick v. Northwest Airlines Corp.*, 372 Fed.Appx. 317, 320 (3rd Cir.2010) (*Empire* "emphasized that *Grable* exemplified a 'slim category' of state-law claims which involve 'pure issues of law' and an application of those issues, which 'sensibly belong[ ] in a federal court'"); *Coventry Health Care, Inc. v. Caremark, Inc.*, 705 F.Supp.2d 921, 927 (M.D.Tenn.2010) (*Empire* emphasized that *Grable* should be read narrowly); *Draper v. Center for Organ Recovery and Educ.*, 2010 WL 1444860 at *3 (W.D.Pa.) (*Empire* explained that *Grable* "represents a 'slim category' of cases and was removable because the only contested issue involved the interpretation of federal statute"); *Gov't of the U.S. Virgin Islands v. Vulcan Materials Co.*, 2010 WL 2654631 at *3-4 (D.V.I.) (discussing differences in *Empire* and *Grable*); *First Pryority Bank v. F&M Bank & Trust Co.*, 2010 WL 3547431 at *3 (N.D.Okla.) ("Only a 'special and small category' of cases will meet the *Grable* standard").

9

## II.     Plaintiffs' Reference to T.A.R.P. in its Complaint Was Ancillary and Innocuous and Provides no Basis for Federal Question Jurisdiction.

In the Motion, Plaintiffs referred to the general averments contained in Paragraph 42 of their *Complaint* as innocuous and wholly ancillary to their state-law cause of action. That is simply because that is all they are— there was no "magic" to the inclusion of Paragraph 42 in the *Complaint*, nor was there any relief sought to be had under that federal law by including Paragraph 42 in the *Complaint*. Defendant takes issue with this position, arguing that: "An examination of Plaintiffs' Complaint leaves no doubt of the importance of the interpretation of Congress' federal TARP law to the ultimate resolution of certain of Plaintiffs' claims." Response at 5.[8] Defendant then states that "this court has a duty to deny…[the] Motion and allow Defendants [sic] to fight the instant law suit in this federal forum." *Id.* Of course, if Defendant's theory of Plaintiffs' action were true, there would be no lawsuit because there exists no private right of action under T.A.R.P. Motion at 11-13. However, for reasons that are obvious and addressed in the Motion and this Reply, that simply is not how Plaintiffs pled, intended to plead or would be required to plead their state-law claims in the *Complaint*.

Defendant also harps on the fact that because the *Complaint* sets up a backdrop of the general partners' financial strain, and because T.A.R.P.-related facts are pled in Paragraph 42, these facts all form some "key factual nexus between [the *alter ego*] theory and Defendant's

---

[8] Defendant also provides the definition of "innocuous" and references the concept of "ancillary" at page 8 of its Response. In that vein it urges the proposition that, because Plaintiffs went to such trouble to investigate exactly how much T.A.R.P. money Defendant's holding company received, and other related facts, Paragraph 42 must clearly have been "intended to **cause offense** and **hostility**" toward Defendant. Response at 8-9. Though S&T Bancorp's T.A.R.P. loan and loan status are easily located online without much more than a Google search, the question of whether "offense or hostility" toward Defendant were intended through the inclusion of those facts into the *Complaint* is a far departure from the legal standard to be employed in assessing federal subject matter jurisdiction in this action.

possession of federal TARP funds." Response at 7.[9] As this theory goes, by creating this supposed "factual connection," "the alleged assumption of special fiduciary duties by Defendant necessarily becomes a major and key factor in determining whether Defendant violated a duty to Plaintiffs when it refused to advance [T.A.R.P.] funds for Plaintiffs' benefit." *Id.*

What Defendant overlooks is the fact that a resolution of Plaintiffs' claims does not depend in any way upon T.A.R.P. or any other federal issue. Rather, ***such a resolution depends entirely upon state law*** which forms the basis for those claims. Plaintiffs have not sued Defendant for breach of any contract to loan T.A.R.P. funds. Nor have Plaintiffs sued Defendant for negligently loaning or failing to loan T.A.R.P. funds. Nor have Plaintiffs sued Defendant for breaching fiduciary duties, or even a duty of good faith and fair dealing, by failing to loan T.A.R.P. funds. Instead, Plaintiffs have sued Defendant for seizing control of their general partners (BDE and BDED), whose assets collateralized the bank's then-existing loans, requiring the appointment of a CRO within those entities to, then, dismiss their long-time president and chief executive and control the general partners and their businesses so it could assess and shore-up the bank's collateral position. When Defendant did this and treated BDE and BDED as the bank's instrumentality and *alter ego*, it took on the additional role of becoming Plaintiffs'

---

[9] The *alter ego* (or mere instrumentality) doctrine of lender liability is not established by a lender's failure to loan unpromised funds to its borrower. Rather, it is rooted in agency principles, holds a dominant corporation responsible for the debts of a corporation it controls, and is established when the dominant corporation's "control is so pervasive that the subservient corporation becomes a 'mere instrumentality' of the dominant corporation." MANNINO, LENDER LIABILITY AND BANKING LITIGATION § 6.02[1] at p.6-4 (Law Journal Press 1989 & Supp.2010) (citing RESTATEMENT (2D) AGENCY § 14(O), and *Krivo Industrial Supply Co. v. Nat'l Distillers & Chemical Corp.*, 483 F.2d 1098, 1103 (5th Cir.1973), *modified*, 490 F.2d 916 (5th Cir.1974); *Schwan's Sales Enterprises, Inc. v. Commerce Bank & Trust Co.*, 397 F.Supp.2d 189 (D.Mass.2005); *FAMM Steel, Inc. v. Sovereign Bank*, 2009 WL 1636350 (1st Cir.2009)). Defendant's contention that a statement about T.A.R.P. funds somehow establishes or affected its *alter ego* status or liability is simply not grounded in fact or law.

11

general partners, charged with all duties that are incumbent upon that fiduciary relationship. Defendant's failure, then, to timely and prudently exercise state-law duties of maintaining and preserving Plaintiffs' operations, businesses and assets, operating the wells prudently, refraining from misappropriating or attempting to misappropriate limited partnership opportunities, and refraining from any competition with Plaintiffs' interests, resulted in the various breaches of duty—whether of a fiduciary, contractual or tortious nature—that are at the heart of Plaintiffs' *Complaint*. Those claimed breaches of duty, as well as all others alleged in the *Complaint*, **wholly depend upon state law for their existence**, and they do not turn upon any question of federal law, substantial or not.

Although Defendant devotes pages in its Response to the financial strain experienced by Plaintiffs' general partners during a time of nationwide financial crisis, those financial issues in no way form the basis of any claim that T.A.R.P. funds were not loaned; those issues do not tie into any substantial question of federal law that would implicate this Court's jurisdiction. There is no doubt that the overall factual backdrop in this action includes allegations that, as part of Defendant's attempts to gain control of Plaintiffs' general partners and their assets, BDE and BDED were financially "starved" and experienced extreme financial strain in 2008 and 2009. This financial strain resulted in the emergence of a promised forbearance agreement, proffered by the bank to induce BDE and BDED management to accept its terms and allow a CRO to gain control from within their companies.

However, Plaintiffs did not allege that Defendant refused, neglected or breached duties by failing to loan T.A.R.P. funds to these companies. Rather, they alleged that Defendant shut-

off their use of funds previously made available under existing loans (dating back to 2002), despite the fact that a default had never been declared. Complaint ¶ 39 (alleging Defendant froze the general partners' ability to draw under their existing loans with some $900,000 in available funds). Plaintiffs also alleged that Defendant refused to allow their general partners to utilize substantial funds one of their principals held in a personal account at the bank to operate the companies and fulfill their duties to Plaintiffs. Complaint ¶¶ 46, 48. Again, nowhere in the *Complaint* have Plaintiffs asserted Defendant's liability premised upon a failure or refusal to loan otherwise *unpromised* T.A.R.P. funds to their general partners. Defendant's attempt to re-cast Plaintiffs' claims to insert a T.A.R.P. cause of action simply because the word "TARP" is contained in the *Complaint* and because of the financial picture that simply forms part of the backdrop of this action are red herrings that deserve no attention from this Court.

### III. Defendant Has not Shown its Removal Efforts Were Undertaken on an Objectively Reasonable Basis.

As the bearer of the burden to show its removal was proper because federal jurisdiction existed (Motion at 15-16),[10] Defendant has failed to articulate any reasonable basis, let alone an objectively reasonable basis, to read a federal cause of action into Plaintiffs' well-pled, state-law *Complaint*. In fact, Defendant's Response is devoid of any discussion concerning its own objectively reasonable basis in terms of 28 U.S.C. § 1447(c) and Plaintiffs' request for reimbursement of the attorneys' fees and costs that it has been required to expend due to the improvident removal. Its omission in this regard is not surprising; Defendant can honestly

---

[10] As the Tenth Circuit in *Laughlin v. Kmart Corp.*, 50 F.3d 871 (10th Cir.1995), held, "[T]here is a presumption against removal jurisdiction." *Id.* at 873. Thus, the burden falls upon the removing party "to set forth, in the notice of removal itself, the 'underlying facts supporting [federal jurisdiction].'" *Id.* (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir.1992)).

espouse **no articulated basis** to show it ever believed removal or subject matter jurisdiction existed. No objectively reasonable basis existed for Defendant to cause Plaintiffs' action to be removed to federal court, not only delaying the proceedings but also causing Plaintiffs to incur substantial attorneys' fees and expenses as a result. Consequently, an award of reasonable attorneys' fees and costs incurred under § 1447(c) is warranted in this action

## CONCLUSION

Try as it might, Defendant simply cannot transform a lawsuit involving only state-law claims and wholly dependent upon state law into a federal action. It cannot piece together verbiage in the *Complaint* to re-write Plaintiffs' allegations as being substantially-dependent upon a federal claim that—as Congress intended and district courts have construed—does not exist. Though Defendant apparently abhors the fact that, while it overreached to control its borrowers (BDE and BDED) and starved them financially by freezing availability under their *existing loans* and refusing to allow a principal's funds at the bank to be used to operate the companies, the bank had received T.A.R.P. funds, those facts are simply that– facts. They only provide a backdrop for the state-law breach of duty claims that have been raised against this overreaching and imprudent east coast bank who damaged so many Wyoming interests, assets, businesses, properties and jobs.

A close reading of the material allegations contained in Plaintiffs' *Complaint* reveal (i) that neither removal nor subject matter jurisdiction ever existed, and (ii) that Defendant had no objectively reasonable basis to read a federal question into that *Complaint* and remove the cause to this Court. The Motion should be granted, and Defendant should be required to pay the

attorneys' fees and costs Plaintiffs incurred because of this improvident removal.

WHEREFORE, Plaintiffs reiterate the same relief they sought in the Motion.

                                          Respectfully submitted,

                                            s/*Greg L. Goddard*
                                            Greg L. Goddard (Wyo. Bar #5-1252)
                                            GODDARD, WAGES & VOGEL, P.C.
                                            412 North Main Street
                                            Buffalo, Wyoming 82834
                                            tel (307) 684-9595 | fax (307) 684-9285
                                            E-mail:  gwv@wyoming.com

**and**

                                            Mark A. Waller*
                                            David H. Herrold*
                                            **SNEED|LANG|HERROLD PC**
                                            1700 Williams Center Tower I
                                            One West Third Street
                                            Tulsa, Oklahoma 74103
                                            tel 918·588·1313 | fax 918·588·1314
                                            E-mail:mwaller@sneedlangherrold.com
                                                       dherrold@sneedlangherrold.com
                                            *pro hac vice admission granted*

                                          **COUNSEL FOR THE PLAINTIFFS**

<u>CERTIFICATE OF SERVICE</u>

      The undersigned hereby certifies that on this 15th day of October, 2010, he caused a true and correct copy of the above and foregoing instrument to be electronically uploaded through the CM/ECF System employed by the U.S. District Court for the District of Wyoming pursuant to D.Wyo.U.S.D.C.L.R. 5.2(a) and according with the guidelines established by the Court in connection therewith, and understands that a true and correct file-stamped copy of the foregoing instrument will be transmitted electronically and pursuant to Fed.R.Civ.P. 5(b)(2)(E), (3) and D.Wyo.U.S.D.C.L.R. 5.3(a) upon the following counsel who have consented to electronic service of such filings:

      **David H Herrold** – dherrold@sneedlangherrold.com
      **Greg L Goddard** –gwv@wyoming.com
      **Mark A Waller** – mwaller@sneedlangherrold.com
      **Ryan J Schwartz** – rschwartz@wpdn.net, ccarpenter@wpdn.net
      **Stuart R Day** – sday@wpdn.net, mglendenning@wpdn.net, mnorby@wpdn.net

                                            s/*Greg L. Goddard*